**Lawrence CALDWELL, Plaintiff,**

v.

**DISTRICT OF COLUMBIA, et al., Defendants.**

**No. 97CV2405.**

United States District Court, District of Columbia.

Sept. 4, 2001.

Elizabeth Alexander, David Fathi, Nat. Prison Project of ACLU Foundation, Washington, DC, for plaintiff.

Lawrence D. Caldwell, Washington, DC, pro se.

Robert Andrew DeBerardinas, Jr., Andrew Stewart Hoenig, Office of Corp. Counsel, Washington, DC, for defendants.

### MEMORANDUM OPINION ON DEFENDANTS' POST-TRIAL MOTIONS

KESSLER, District Judge.

On January 24, 2001, following six days of trial including deliberations, a jury returned a verdict for Plaintiff on all claims in the amount of $ 174,178.00. Defendants have renewed their trial motion for judgment as a matter of law, Fed.R.Civ.P. 50(b), and alternatively move for a new trial pursuant to Fed.R.Civ.P. 59(a). Upon review of the motion, Plaintiff's opposition, the extensive record in this case and the applicable law, both motions will be denied, except that the verdicts assessing damages for violation of the Lorton Regulations Approval Act will be vacated based on the recent decision of the District of Columbia Court of Appeals in *Coates v. Elzie*, 768 A.2d 997 (D.C.2001).[1]

Plaintiff, a prisoner of the District of Columbia Department of Corrections, sued the District of Columbia and several employees of its Department of Corrections for injuries suffered as a result of allegedly unconstitutional actions in violation of the Civil Rights Act, 42 U.S.C. § 1983. The claims arose out of Plaintiff's residence in the Maximum Security Facility at the Lorton Correctional Complex in May 1997. For several months during 1997, Plaintiff was lodged in the lower left tier of Cell Block 3 in that facility, a cell block in which mentally ill prisoners and those requiring special handling were housed. Plaintiff alleged, and the testimony showed, that conditions in this cell block were characterized by excessive heat, lack of ventilation, water contaminated with feces and urine that flooded into the cells, smoke from rolled toilet paper "wicks", mace, excessive noise, and lack of outdoor recreation. Plaintiff contended that certain of the Defendants were aware of and tolerated these conditions, which constituted cruel and unusual punishment in violation of the Eighth Amendment. He also claimed that similar conditions persisted in the other tiers of Cell Block 3, where he was housed from September 30, 1999, to October 6, 2000.

Plaintiff also asserted that the deliberate failure of Defendants to comply with medical orders for treatment of his glaucoma and skin cancer exacerbated those conditions, again in violation of the Eighth Amendment. Other claims involved a due process violation for the procedure under which Plaintiff was transferred to the lower left tier of Cell Block 3 in May 1997, violations of the Lorton Regulations Approval Act, and the conditions of confinement in Cell Blocks 2 and 4 of the Maximum Security Facility from August 1997 through September 1999. Plaintiff presented both lay and expert testimony in support of his claims.

### I. STANDARD OF REVIEW

Defendants' motion for judgment as a matter of law must be denied "unless the evidence, together with all inferences that can reasonably be drawn therefrom is so one-sided that reasonable [people] could not disagree on the verdict." *Mackey v. United States*, 8 F.3d 826 (D.C.Cir.1993), *citing Carter v. Duncan–Huggins, Ltd.*, 727 F.2d 1225, 1227 (D.C.Cir.1984) (citations omitted). The Court may not, however, substitute its judgment for that of

---

1. The jury awarded Plaintiff $ 1.00 against Defendant Belinda Watson Barney, Adrienne Poteat, and the District of Columbia jointly, $ 1.00 against Defendant Joann Williams, and $ 1.00 against Defendant Rex [hezue] for violation of the Lorton Regulations Approval Act.

the jury by weighing the evidence or the credibility of the witnesses.

Defendants' motion for a new trial pursuant to Fed.R.Civ.P. 59 may be granted if "the verdict is against the weight of the evidence, damages are excessive, for other reasons the trial was not fair, or substantial errors occurred in the admission or rejection of evidence or the giving or refusal of instructions." *Dickerson v. HBO & Co.*, 1995 WL 767177 (D.D.C.1995), *citing Sedgwick v. Giant Food, Inc.*, 110 F.R.D. 175, 176 (D.D.C.1986). The issue is essentially whether there was "a clear miscarriage of justice." *Id.*

## II. DISCUSSION

### A. Plaintiff's Closing Argument Regarding Damages

In closing argument, Plaintiff's counsel proposed specific dollar amounts for the jury's consideration in awarding damages. Defendants' objection was overruled at that time. The following morning, however, the Court instructed the jury to disregard the dollar amounts mentioned by counsel, reiterated that the arguments of counsel were not evidence, and instructed the jury that the amount of damages, if any were awarded, was for them alone to decide based on the record and all the Court's instructions. The verdict was not returned until 2:24 p.m., several hours after the supplemental instruction was given. Defendants argue that a new trial should be granted because counsel's closing argument was so improper that the Court's instructions were inadequate to overcome the prejudice.

The Courts of Appeals for the various circuits are divided as to whether the suggestion of an appropriate amount of damages in closing argument is *per se* improper. Some courts flatly prohibit counsel

from mentioning any specific amount for pain and suffering; others have adopted "a more flexible approach that would leave the matter largely to the trial judge's discretion." *See Mileski v. Long Island RR Co.*, 499 F.2d 1169, 1173–74 (2d Cir.1974), and cases cited. The Court of Appeals for this Circuit, in its most recent published opinion, stated only that "to constitute reversible error a counsel's request for specific compensation must cause actual prejudice." *Queen v. Washington Metro. Area Transit*, 901 F.2d 135, 140 (D.C.Cir.1990), citing Judge Youngdahl's discussion in *Piper v. Andrews*, 216 F.Supp. 758, 762 (D.D.C.1963). In *Queen*, the court declined to find reversible error in an argument that counsel "thought 'a million dollars' was appropriate compensation."[2] *Id.* The court relied on the express finding of the trial judge that no prejudice had ensued and that the suggested figure was supported by the plaintiff's evidence. Moreover, the appellate court noted, plaintiff's counsel had withdrawn his remark and apologized to the jury, and the court had immediately instructed the jury to disregard the suggestion.

In arguing that counsel's argument in this case created actual prejudice. Defendants rely on the coincidence that the amounts suggested by Plaintiff's counsel totaled $ 175,025 and the jury awarded damages of approximately that amount, $174,178. In fact, however, as Plaintiff points out, the amounts awarded by the jury on specific claims bear no relation to the amounts suggested by counsel. For example, counsel suggested an award of $41,600 to compensate for Plaintiff's first incarceration in Cell Block 3. The jury awarded a total of $ 21,501 in compensatory and $10,000 in punitive damages on that claim. For the failure to treat Plaintiff's

---

**2.** The jury awarded plaintiff in that case $1.2 million in damages.

skin cancer appropriately, counsel suggested $30,000 as appropriate compensation; the jury awarded Plaintiff $45,000 in compensatory and $ 20,000 in punitive damages. The jury rejected Plaintiff's suggestion that $74,200 would be appropriate compensation for his last tenure in Cell Block 3, awarding only $46,375 in compensatory damages (and $15,000 in punitive damages). The clearest indication that counsel's argument did not sway the jury is its refusal to award *any* damages for Plaintiff's 769 days in Cell Blocks 2 and 4, rejecting the suggestion that it award $19,225 because of the allegedly unconstitutional conditions of confinement in those cellblocks.

Before it heard the arguments of counsel, the jury was instructed specifically that the

> statements and arguments of the lawyers, such as their opening and closing arguments, are not evidence. They are only intended to help you understand and interpret the evidence from each party's perspective.

The jurors were further instructed that

> If you find for the plaintiff, then you must award the Plaintiff a sum of money which will fairly and reasonably compensate him for all the damage which he experienced which was proximately caused by any defendant.
>
> . . . . .
>
> The burden of proof is upon the Plaintiff to establish all elements of his damages by a preponderance of the evidence. The Plaintiff must prove his damages with reasonable certainty. You may only award the Plaintiff damages for past, present or future harm that is not speculative. Speculative damages are those that might be possible but are remote or based on guesswork. . . . You may award the Plaintiff damages that are based on a just and reasonable esti-

mate derived from relevant evidence. . . . .

On the second day of jury deliberations, however, several hours before the verdict was returned, the Court, after hearing further argument, recalled the jury and instructed it specifically to disregard the dollar amounts suggested by counsel in closing argument. The Court reiterated that the arguments of counsel do not constitute evidence and that the decision as to whether to award damages and, if so, the amount of damages, was for the jury alone, to be based on the record and on all the Court's instructions.

 The jury must be presumed to follow the Court's instructions. *United States v. Olano,* 507 U.S. 725, 740, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). In this case, comparison of the verdict with counsel's suggested figures makes clear that this jury did follow the Court's instructions to disregard the dollar figures proposed by Plaintiff's counsel. The Court explicitly finds that Defendants were not prejudiced by counsel's suggestion of appropriate compensation for the various violations of Plaintiff's constitutional rights.

### B. Physical Injury Under the Prison Litigation Reform Act

Defendants next contend that Plaintiff's claims are barred by Section 803(d) of the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(e), which provides that

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

This argument reiterates an argument made by Defendants in a motion for partial dismissal or partial summary judgment filed January 9, 2001, one week before the

trial, which was opposed by Plaintiff and denied by the Court at the outset of trial on January 16, 2001.

Defendants rely on *Davis v. District of Columbia,* 158 F.3d 1342 (D.C.Cir.1998), which upheld the constitutionality of Section 1997e(e), and on decisions in other circuits that relied on Section 1997e(e) to reject claims by prisoners who either did not allege physical injury or suffered only minor physical injuries from the allegedly unconstitutional actions of prison officials. *Zehner v. Trigg,* 133 F.3d 459 (7th Cir. 1997)(no allegation of physical injury); *Sarro v. Essex County,* 84 F.Supp.2d 175 (D.Mass.2000)(no physical injury when asthma sufferer required to use inhaler for three days because of restricted airflow to cell)[3]; *Evans v. Allen,* 981 F.Supp. 1102 (N.D.Ill.1997)(no allegation of physical injury); *Luong v. Hatt,* 979 F.Supp. 481 (N.D.Tex.1997)(cuts and bruises lasting three days insufficient physical injury). Defendants describe Plaintiff's testimony as recounting:

> feces in his cell, small cells and beds, lack of outdoor recreation, general lack of cleanliness, poor ventilation, smoke and mace in the air, flooding in the cellblocks, noise and odors in the cell blocks, foul water dripping in his cell and poor temperature regulation.

Memorandum, at 5. They argue that Plaintiff "failed to prove any injury as a result of these incidents and conditions which would satisfy the requirements of § 1997e(e)." *Id.*

Plaintiff, on the other hand, points to cases holding that a prisoner need not suffer *serious* physical injury[4] before bringing suit for violation of constitutional rights. *E.g., Wolfe v. Horn,* 130 F.Supp.2d 648 (E.D.Pa.2001)(vomiting, cramps, hot flashes, hair loss); *Williams v. Goord,* 111 F.Supp.2d 280, 291 n. 4 (S.D.N.Y.2000)(deprivation of exercise for 28 days potentially injurious to health); *Cole v. Artuz,* 2000 WL 760749, at * 4–5 n. 2 (S.D.N.Y.2000)(aggravation of pre-existing back injury); *cf. Gibbs v. Cross,* 160 F.3d 962 (3d Cir.1998)(severe headaches, mucus, watery eyes from "dust, lint, and shower odor" constitute "serious physical injury" under 28 U.S.C. § 1915(g)). Plaintiff points to his testimony that as a result of the conditions of confinement that the jury found to be unconstitutional he was dizzy, dehydrated, and disoriented, which were symptoms of heat exhaustion, according to Plaintiff's medical expert, Dr. Jerry Walden. Plaintiff sustained a severe rash from the heat conditions and plastic mattress, which Dr. Walden indicated increased his risk of skin infection and additional skin cancer. The smoke from repeated fires in the cell block caused bronchial irritation. Plaintiff suffered increased pain from the effect of a small bunk on his pre-existing back condition.

Defendants discount Plaintiff's testimony about nose and throat irritation from wicks (burning lengths of tightly rolled toilet paper) because he did not specifically state that it was *his* nose and throat that were irritated. His medical record, however, contains a diagnosis of bronchial irritation due to smoke. Defendants reject his testimony that the frequent use of mace caused his eyes and nose to run, that he choked and sneezed, and that he was obliged to use a washcloth to breathe, be-

---

**3.** Erroneously cited by Defendants as *89 F.Supp.2d.*

**4.** *Cf.* 28 U.S.C. § 1915(g), which precludes prisoners in certain circumstances from bringing an action *in forma pauper is* unless they are "under imminent danger of *serious* physical injury." (Emphasis added.)

cause Plaintiff failed to specify the number of times this happened or how long his distress lasted. Defendants contend that the pain Plaintiff suffered in breathing after a cellblock fire was inadequate to constitute "injury." Defendants suggest that "lasting 'harms'" are required to satisfy Section 1997e(e), and that loss of weight and aggravation of arthritis (from being obliged to sleep curling his 6'5" body up on a bunk only 6' long) are not sufficiently harmful.

The only reported decision in this Circuit on Section 1997e(e) is *Davis v. District of Columbia, supra.* That case fails to support Defendants' position that a prisoner must allege serious, "lasting" physical injury as a requirement for an action for compensatory damages. Although the Court referred to "a qualifying physical injury," 158 F.3d at 1347, it also described the purpose of Section 1997e(e) as "curtailment of prisoner suits that depend *entirely* on claims of emotional or mental injury" *Id.* (emphasis added.). The judgment dismissing the complaint was affirmed because Davis, who claimed only emotional and mental distress, had "alleged no compensable injury." *Id.* at 1348. The Court concludes that Section 1997e(e) does not require a prisoner to allege or prove serious, permanent physical injury in order to bring an action for violation of his constitutional rights. Plaintiff has alleged and proven significant physical injury which is more than sufficient to satisfy the PLRA.[5] Moreover, as Plaintiff points

out, failure to comply with PLRA requirements is an affirmative defense, which was waived when not asserted in the answer. *See Jenkins v. Haubert,* 179 F.3d 19, 28–29 (2d Cir.1999).

### C. Sufficiency of Risk of Serious Harm from Conditions of Confinement

Defendants next argue that Plaintiff's evidence failed to meet the requirements of *Helling v. McKinney,* 509 U.S. 25, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993), insofar as he sought damages from exposure to second hand smoke.[6] Citing *Scott v. District of Columbia,* 139 F.3d 940 (D.C.Cir.), *cert. denied,* 525 U.S. 851, 119 S.Ct. 125, 142 L.Ed.2d 101 (1998), Defendants contend that the verdict must be vacated because Plaintiff produced no objective evidence of the quantity of smoke to which he was exposed and no evidence that he was actually injured by smoke inhalation.

Plaintiff responds persuasively that *Scott* involved only one issue, whether the second hand smoke from cigarettes created conditions of confinement in violation of the Eighth Amendment. In the instant case, however, Plaintiff testified to a variety of conditions that, taken together, resulted in an unconstitutional situation in the cell to which he was confined, including excessive heat, lack of ventilation, the plastic mattress, the occasional lack of drinking water, flooding, and feces in the cells. Moreover, in *Scott* there was no objective evidence that the level of second hand tobacco smoke was above acceptable limits,

---

5. The Court notes the decision in *Waters v. Andrews,* 2000 WL 1611126, at * 7–8 (W.D.N.Y.2000), which held that an Eighth Amendment claim based on conditions of confinement does not have mental, emotional, or physical injury as an element and therefore can be brought regardless of whether the plaintiff claims physical injury, despite Section 1997e(e).

6. Defendants also reiterate their argument that the proof of injury from the smoke failed to meet the Section 1997e(e) requirement of prior physical injury. As noted, the Court concludes that this section does not require proof of serious, permanent injury. Plaintiff's testimony of sinus and bronchial irritation, shortness of breath, and eye and lung irritation from smoke and mace clearly was sufficient to satisfy this requirement.

whereas in the instant case Plaintiff testified that on at least one occasion smoke from a fire coated his nostrils with soot.

Similarly, Defendants contend that Plaintiff failed to prove an Eighth Amendment violation because he produced no "objective" evidence that the excessive noise to which he testified caused a hearing loss. Inexplicably, Defendants quote a paragraph from *Lucien v. Peters,* 99 F.3d 1142 (7th Cir.1996), which cites cases that upheld constitutional challenges to excessive noise as an Eighth Amendment violation. Plaintiff correctly points out that *Lucien* does not support Defendants' position, and further notes that there was uncontradicted testimony by himself and other witnesses about the noise levels in Cell Block 3. His contention was that the noise contributed to the Eighth Amendment violation by depriving him of sleep. *See Harper v. Showers,* 174 F.3d 716, 720 (5th Cir.1999).

■ Neither *Lucien* nor the cases it cited support Defendants' position. The court in *Lucien* reversed the dismissal of a *pro se* complaint, holding that the allegations regarding excessive noise were sufficient to state a claim. Some of the cases cited in *Lucien* similarly involved challenges to the sufficiency of a complaint; others such as *Inmates of Occoquan v. Barry,* 844 F.2d 828, 848 (D.C.Cir.1988), held that excessive noise may be a constitutional violation in combination with "other systemic deficiencies."

The jury was instructed that in order to find for Plaintiff on his Eighth Amendment claims,

> Plaintiff must prove by a preponderance of the evidence that at least one of the Defendants was deliberately indifferent to a substantial risk of serious harm to Plaintiff.

A substantial risk of serious harm is one that jeopardized the Plaintiff's health or safety. A serious risk to future health may also constitute a substantial risk of serious harm.

The jury was entitled to consider the testimony about all aspects of the conditions in Cell Block 3 when it reached its conclusion that Plaintiff was subjected to unconstitutional conditions when housed in that unit. Its verdict is amply supported by the evidence and will stand.

## D. Plaintiff Proved That The Conditions of Confinement Were Cruel and Unusual

Defendants next argue that Plaintiff failed to prove that the conditions of his confinement were such as to constitute cruel and unusual punishment in violation of the Eighth Amendment. Defendants admit that the conditions described by Plaintiff "may have been unpleasant, or unhealthful in the short term." Memorandum at 11. They contend, however, that Plaintiff did not prove that these conditions "posed an excessive risk of harm . . ." in violation of the Constitution. *Id.*

Defendants again summarize Plaintiff's testimony as to the conditions in the cellblock including, *inter alia,* as follows:

> feces in his cell, too-small cells and beds, lack of outdoor recreation,[7] general lack of cleanliness, poor ventilation, smoke and mace in the air, flooding in the cellblocks, noise and odors in the cell blocks, foul water dripping in his cell and poor temperature regulation.

Memorandum, pp. 9–10. They argue, however, that "assuming his testimony was credible," Plaintiff presented no evidence that any of these conditions were harmful, because his medical expert did not testify that he had been seriously harmed, nor did

---

7. *See Spain v. Procunier,* 600 F.2d 189, 199 (9th Cir.1979).

the expert witness on penology testify that any of the conditions were "excessively harmful." Memorandum at 10. In support of this argument, Defendants cite *Beverati v. Smith*, 120 F.3d 500, 504 (4th Cir.1997). In *Beverati*, however, the plaintiffs alleged that their confinement in administrative segregation deprived them of a liberty interest in remaining in general population and that the decision to continue them in segregation was so arbitrary as to deny them due process. The plaintiffs did *not* challenge the conditions in segregation as being so unhealthy as to constitute cruel and unusual punishment.

The jury in this case was instructed that in order to find any Defendant responsible for exposing Plaintiff to cruel and unusual punishment in violation of the Eighth Amendment,

> the Plaintiff must prove by a preponderance of the evidence that at least one of the Defendants was deliberately indifferent to a substantial risk of serious harm to Plaintiff
>
> A substantial risk of serious harm is one that jeopardized the Plaintiff's health or safety, A serious risk to future health may also constitute a substantial risk of serious harm. . . .
>
> You are permitted . . . to infer from circumstantial evidence that the Defendant knew of the substantial risk from the very fact that the risk was obvious. In other words, if the condition or problem was long-standing, pervasive, well-documented or expressly noted by prison officials in the past, you may conclude that the Defendants knew of the risk in this case.

██ Because the jury returned a verdict for Plaintiff, it obviously found his testimony credible and concluded that the exposure to feces in his cell, foul water, filth, excessive heat, smoke, and mace, and the lack of outdoor exercise, resulted in a substantial risk of serious harm to Plaintiff. Although no medical or other expert testimony was required to support the jury's verdict on these claims, Plaintiff's medical expert, Dr. Jerry Walden, testified that Plaintiff experienced symptoms of heat exhaustion caused by excessive heat without ventilation and, at times, a lack of water when the staff sought to prevent flooding of the cellblock by other inmates. The smoke caused bronchitis. The refusal of staff to provide Plaintiff with a bed suitable for a person of his height caused him pain by the exacerbation of a previous back injury. As Plaintiff points out, a violation of the Eighth Amendment may occur when a prisoner is subjected to unnecessary pain. *E.g.*, *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *McElligott v. Foley*, 182 F.3d 1248, 1257 (11th Cir.1999); *Boretti v. Wiscomb*, 930 F.2d 1150, 1154–55(6th Cir. 1991).

Moreover, there was more than adequate evidence in the record that Defendants were on notice of the unconstitutional conditions in Cell Block 3. Plaintiff submitted copies of several grievances he had written to Corrections personnel and the Mayor regarding the conditions in the cellblock, of the consent decree in *Doe v. District of Columbia*, Civil Action 79–1726, and of the January 1996 Final Report of the District of Columbia Department of Corrections Study. These documents showed that the individual Defendants and the District of Columbia were on notice that the heat and lack of ventilation in the cellblock caused heat exhaustion and disorientation, that there were no laundry or cleaning supplies available to residents, and that conditions generally were intolerable.

The jury's verdict was plainly supported by sufficient evidence.

## E. The Testimony of E. Eugene Miller Should Not Have Been Stricken

E. Eugene Miller testified for Plaintiff as an expert in penology. Defendants contend that his testimony should have been stricken because he did not testify that the District of Columbia violated specific standards of the American Correctional Association ("ACA"). Defendants argue that his testimony therefore failed to meet the requirements for expert testimony set forth in *District of Columbia v. Moreno*, 647 A.2d 396 (D.C.1994).

As Plaintiff points out, however, *Moreno* involved an action based on alleged negligence under District of Columbia law, rather than a Section 1983 claim for violation of federal constitutional rights. The case that Defendants cite as approving the *Moreno* rule, *National Tel. Coop. Ass'n v. Exxon*, 38 F.Supp.2d 1 (D.D.C.1998), also was a case based on District of Columbia law, in which District of Columbia rules of decision apply. 28 U.S.C. § 1652; *Erie RR Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Miller's testimony was directed toward the Section 1983 claim; there was no claim for negligence in Plaintiff's complaint.

■ Federal evidentiary standards rather than District of Columbia rules apply to the admissibility of expert testimony in Section 1983 cases. Rule 702 of the Federal Rules of Evidence provides that

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

While an expert with specialized knowledge in an area such as corrections may testify about accepted practice in the field, neither party has pointed to any decision requiring that the expert refer to specific standards and explain why the standards have or have not been violated in the particular case. *See, e.g., Zuchel v. City and County of Denver*, 997 F.2d 730 (10th Cir.1993); *Kopf v. Skyrm*, 993 F.2d 374 (4th Cir.1993). Indeed, in a case in which several factors combine to cause a constitutional violation, expert testimony may not be necessary at all. *See Morgan v. District of Columbia*, 603 F.Supp. 254 (D.D.C.1985), *aff'd*, 824 F.2d 1049 (D.C.Cir. 1987). In any event, as Plaintiff points out, Miller did describe at least two ACA standards that were violated by the District of Columbia at the Maximum Security Facility: those regarding cell size and frequency of inspections by the warden.

The jury was instructed that the testimony of the expert witnesses, including Miller, "should be judged just as any other evidence." The jury might "accept it or reject it, or give it as much weight as [it] thinks it deserves, considering the witness's education and experience, the reasons given for the opinion, the expert's credibility and all the other evidence in the case." Defendants do not argue that Miller's testimony failed to meet federal standards for expert testimony. The motion to strike his testimony was correctly denied.

## F. Dr. Walden's Expert Reports Were Adequate

■ Defendants next contend that Plaintiff's medical expert, Dr. Jerry Walden, should not have been allowed to testify because his expert report did not meet the requirements of Fed.R.Civ.P. 26(a)(2). At the outset of trial, Defendants moved to strike Dr. Walden's report on the same ground. The objection then and now was that the report did not state that Plaintiff's glaucoma was exacerbated by the delay in treatment or that the delay in treating his skin cancer led to a higher risk of further

lesions. The motion was denied because the report presented factual issues for the jury as to the existence and extent of Plaintiff's injuries, including the need for additional surgery, the interruption of the glaucoma treatment resulting in pain and increased eye pressure, and physical injury including the aggravation of pain from a pre-existing orthopedic condition. The Court concludes that the motion was properly denied.

Defendants argue first that Dr. Walden's October 16, 2000, report failed to state any opinion as to the cause or severity of Plaintiff's glaucoma, whether he suffered pain from the glaucoma, and the harm, if any, caused by any delay in treatment. Plaintiff responds persuasively that these matters are discussed in sufficient detail in an earlier report dated June 28, 2000, which was provided to Defendant in June, 2000.[8] The June 28 report discusses in sufficient detail the cause of the glaucoma, its severity, the lack of continuous treatment, and the fact that the glaucoma had progressed during an interruption in treatment. The report criticizes "the failure to obtain continuous observation and treatment with some progression of [Plaintiff's] eye disease at present, and certainly he is at risk to lose this eye." Dr. Walden further notes that "[t]he gaps in follow-up care are not explained by the record."

Defendants next object that in his report Dr. Walden does not express an opinion that Plaintiff's skin cancer was caused or exacerbated by any failure of the District of Columbia to treat his condition. As Plaintiff points out, however, the October 16 report states specifically that Plaintiff had experienced several instances of skin cancer or precursors of cancer, and that "surgery for the last lesion was necessitated after a delay in treatment . . . ." The delay occurred between 1998 and August 1999, "when the lesion was felt to be beyond the scope of" nonsurgical treatments that had been used earlier. Moreover, Dr. Walden's report states that with his history of skin cancer "due to sun damaged skin", Plaintiff "needed" the protection that would have been afforded by long sleeved shirts and a broad brimmed hat, as recommended by physicians. Dr. Walden specifically gave his opinion that "the deliberate decision to deny him these articles of clothing was medically unwarranted." In addition, the provision of a plastic mattress and denial of an appropriate mattress cover resulted in sweating in the summer heat, causing "dermatitis that could exacerbate his skin cancers and certainly add to his general discomfort."

Defendants finally attack as inadequate the sections of the report dealing with Plaintiff's back pain and the medical consequences of the general conditions of confinement. They suggest that the report fails to explain the basis for his opinion, the information on which he based his opinion, and does not express an opinion to a reasonable degree of medical certainty as to why the conditions were harmful.

The October 16 report begins with the statement that Dr. Walden "ha[s] reviewed the medical files on Mr. Caldwell, and ha[s] come to opinions on the following issues raised by Mr. Caldwell." The report, fairly read, contains the witness'

---

8. *See* Exhibit 1 to Declaration of Elizabeth Alexander submitted in support of Plaintiff's Opposition to Defendants' Motion to Dismiss filed January 9, 2001. Ms. Alexander's declaration submitted with Plaintiff's opposition to the current motion explains that she had been unable to discuss the glaucoma portion of the October 16 report with Dr. Walden before providing it to defense counsel because the witness had been out of the country. Immediately before trial, on January 16, 2001, Ms. Alexander advised defense counsel that she relied on the glaucoma portion of the June 28 report.

opinions, the bases and reasons for those opinions, and the information he considered in forming the opinion. As Plaintiff notes, if Defendants had further questions for Dr. Walden he could have been deposed. The motion to strike his report was correctly denied. Defendants had ample notice of the subject matter of Dr. Walden's expert testimony.

### G. Dr. Walden's Testimony Was Properly Admitted

Defendants next argue that Dr. Walden's testimony should have been excluded because it did not meet the standard for admissibility of expert testimony set out in *Daubert v. Merrell Dow Pharmaceuticals,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Defendants contend that Dr. Walden's testimony failed to satisfy the *Daubert* requirement of reliability, that is, testing, peer review, potential rate of error, and general acceptance in the relevant scientific community. They argue that Dr. Walden cited no authority for his opinions and failed to identify the one study (regarding the risk of skin cancer from trauma) that he did cite.

The only objection made by Defendants to Dr. Walden's testimony at trial was that his testimony that Plaintiff's immune system had been compromised by the conditions of his confinement did not meet the *Daubert* test. As Plaintiff points out, however, this was not an opinion that he asked the witness about. It was only on cross-examination that Defendants elicited Dr. Walden's opinion that, to a reasonable degree of medical certainty, the trauma and exposure to which Plaintiff had been subjected made it more likely than not that he would contract diseases such as

cancer, heart disease, diabetes, or peptic ulcer. Defendants then objected to this opinion, which was not included in Dr. Walden's report. Defendants cannot now complain about obtaining testimony they elicited during their cross-examination of the witness because it proved unfavorable to their case.

Dr. Walden, who was accepted as an expert in family medicine, was certified as a diplomate of the American Board of Family Physicians in 1976, and was recertified in 1982, 1988, and 1994. He currently is head of the Family Practice Department of St. Joseph Mercy Hospital in Michigan, and a member of several medical associations. His curriculum vitae, submitted with his October 2000 report, describes his education and professional experience since his licensing by Michigan in 1967. Plaintiff asserts without contradiction that he ventured only opinions on matters that a practicing physician's training and clinical experience would support. Moreover, Dr. Walden testified that his opinions were based on Plaintiff's medical history.

Defendants object that Dr. Walden "added nothing to the record which was not already in evidence from [Plaintiff's] own testimony." Memorandum, at 19. This objection was not raised at trial and in any event is not a reason for excluding his testimony but rather a matter for argument to the jury.

Furthermore, Defendants did not seek a pretrial *Daubert* hearing on Dr. Walden's qualifications to testify as an expert on the matters contained in his reports.[9] Had such a motion been filed,

9. Defendants also object that the witness did not examine Plaintiff nor did he review any document and that he based his opinion solely on a review of Plaintiff's medical chart. Dr. Walden, Defendants claim, "did not testify that it was common for family physicians to base their opinions to a reasonable degree of medical certainty based only upon a reading of a medial [sic] chart and a brief history." Memorandum at 20. As Plaintiff points out,

Plaintiff could have presented additional evidence on the scientific bases for Dr. Walden's opinion.

In sum, Dr. Walden's testimony was admissible.

### H. Plaintiff Presented Sufficient Evidence of Deliberate Indifference to His Medical Needs

Defendants next argue that Plaintiff failed to prove that the prison officials were deliberately indifferent to his serious medical needs, as required by *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

▮▮▮▮▮ Certainly mere medical malpractice does not constitute a federal constitutional violation. *E.g., Mitchell v. Roach*, 1999 U.S. Dist. LEXIS 3655 (D.D.C. March 12, 1999). Plaintiff, however, presented evidence that treatment for his glaucoma and skin cancer was delayed for substantial periods, despite his repeated grievances, Defendant Poteat admitted receiving these grievances. Memorandum at 23–24. The delay in treating his skin cancer finally required surgical removal of the lesion rather than cryosurgery, which clearly would have been a less invasive procedure. The delay in providing him with medically ordered clothing and mattress cover increased the risk of future skin cancer. The delay in treating his glaucoma resulted in corneal swelling, increased pressure and pain, and the possible loss of his eye. The jury was instructed that in order to find for Plaintiff on the Eighth Amendment claims they must find that "a Defendant acted or failed to act despite knowledge of a substantial risk of serious harm." The verdict was plainly supported by the evidence.

Moreover, as Plaintiff points out, Defendants did not raise this issue before judgment and therefore have waived the argument. *Whelan v. Abell*, 48 F.3d 1247, 1251 (D.C.Cir.1995); *Kattan v. District of Columbia*, 995 F.2d 274 (D.C.Cir.1993), *cert. denied*, 511 U.S. 1018, 114 S.Ct. 1398, 128 L.Ed.2d 71 (1994).

### I. Plaintiff Was Not Required to Present Evidence of The Individual Defendants' Financial Resources.

▮▮▮▮▮ The jury returned verdicts assessing punitive damages on certain of the claims against Defendants Wiley,[10] Watson Barney, and Poteat. These Defendants object that Plaintiff presented no evidence as to their financial status and therefore the award of punitive damages was improper. Again, this is an argument made for the first time after judgment and has therefore been waived. *Whelan v. Abell, supra.* The argument is, in any event, without merit. The majority rule in the federal courts is that a defendant who seeks to forestall an award of punitive damages based on his financial condition must present evidence that such an award would be inappropriate for that reason. *E.g., Hutchinson v. Stuckey*, 952 F.2d 1418, 1422 n. 4 (D.C.Cir.1992). *Accord, Grabinski v. Blue Springs Ford Sales, Inc.*, 136 F.3d 565, 570 (8th Cir.1998); *Kemezy v. Peters*, 79 F.3d 33 (7th Cir. 1996). Defendants were on notice that Plaintiff sought punitive damages yet failed to present any evidence of their financial situation. Moreover Plaintiff correctly points out that the case on which Defendants rely, *Jonathan Woodner Co. v. Breeden*, 665 A.2d 929 (D.C.1995), held only that a plaintiff who argues that puni-

---

however, a physician may testify to an opinion based on a review of medical records alone. *Kannankeril v. Terminix Intern., Inc.*, 128 F.3d 802, 807 (3d Cir.1997).

**10.** The judgment against Defendant Wiley has been deemed satisfied. Docket No. 140.

tive damages should be awarded because of the defendant's wealth must present evidence of the defendant's net worth. The general rule under District of Columbia law is that a plaintiff need not introduce evidence of a defendant's financial capacity to justify an award of punitive damages. *Town Center Mgmt. Corp. v. Chavez*, 373 A.2d 238 (D.C.1977). Defendants' objection is unsupported by case law as well as fatally tardy.

## III. CONCLUSION

For the foregoing reasons, the Court concludes that the trial was fair, the damages awarded were not excessive, and the verdict was fully supported by the evidence. Defendants' motions, based in large part on matters not raised before verdict, will be denied.

An appropriate order accompanies this Memorandum Opinion.

## ORDER GRANTING MOTION FOR PUBLICATION

On consideration of Plaintiff's unopposed motion requesting publication of the September 4, 2001, memorandum opinion denying Defendants' post-trial motions, it is by the Court this 23rd day of January, 2002,

**ORDERED** that Plaintiff's motion [Dkt. # 157–1] is **GRANTED.**